**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darrel Eston Lee,<br><br>                    Petitioner,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>                    Respondents. | No. CV 04-039-PHX-MHM<br><br>DEATH PENALTY CASE<br><br><br>**ORDER RE: MOTION FOR DISCOVERY, EVIDENTIARY HEARING AND EXPANSION OF THE RECORD** |

Petitioner Darrel Eston Lee (Petitioner) is a state prisoner under sentence of death. Pending before the Court is Petitioner's consolidated motion for discovery and/or evidentiary hearing and to expand the record.  (Dkt. 78.)[1]  Petitioner seeks discovery and/or an evidentiary hearing with regard to Claims 1, 2, 4, 6 and 9, and to expand the record in support of Claims 1, 2, 5 and 9.[2]  Respondents filed an opposition, and Petitioner filed a reply.  (Dkt. 82, 85.)

Pursuant to the Court's general procedures governing resolution of capital habeas proceedings, the parties have completed briefing of both the procedural status and the merits of Petitioner's habeas claims.  Before considering Petitioner's requests for evidentiary

---

[1]     "Dkt." refers to the documents in this Court's case file.

[2]     In conjunction with his motion to expand the record, Petitioner proffers an appendix containing fifty-four exhibits. (Dkt. 53.)

1  development on Claims 1, 2, 4-6 and 9, the Court first determines whether these claims are

2  appropriate for review on the merits by a federal habeas court or subject to a procedural bar.

3  ## FACTUAL AND PROCEDURAL BACKGROUND

4  Petitioner was tried, convicted and sentenced to death for the 1991 murder of John

5  Anderson, a stranger who had agreed to give a car ride to Petitioner and co-defendant Karen

6  Thompson. On direct appeal, the Arizona Supreme Court affirmed. *See State v. Lee*, 185

7  Ariz. 549, 917 P.2d 692 (1996). In 1998, the Arizona Supreme Court issued the mandate in

8  Petitioner's case, concluding direct appeal proceedings and appointing counsel for post-

9  conviction relief ("PCR") proceedings. Following appointment, counsel filed a PCR petition.

10  (ROA-PCR 3.)[3] The trial court summarily denied several of Petitioner's PCR claims and

11  held an evidentiary hearing regarding the remainder. (ROA-PCR 12.) Following the

12  hearing, the court denied relief (ROA-PCR-ME 34), and the Arizona Supreme Court denied

13  a petition for review. (PR Doc. 15.) Petitioner then commenced these proceedings.

14  ## PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

15  Because this case was filed after April 24, 1996, it is governed by the Antiterrorism

16  and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA). *Lindh v. Murphy*, 521

17  U.S. 320, 336 (1997); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003). The

18  AEDPA requires that a writ of habeas corpus not be granted unless it appears that the

19  petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also*

20  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509 (1982). To

21  properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's

22  highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838,

23

24  [3] "ROA-PCR" and "ROA-PCR-ME" refers to seven volumes of pleadings and one
25  volume of minute entries from post-conviction proceedings prepared for Petitioner's petition
for review to the Arizona Supreme Court (Case No. CR-03-0197-PC). "PR Doc." refers to
26  documents filed in the Arizona Supreme Court during Petitioner's petition for review. "RT"
27  refers to the reporter's transcript of the trial proceedings. The original reporter's transcripts
and certified copies of the trial and post-conviction records were provided to this Court by
28  the Arizona Supreme Court. (Dkt. 74.)

848 (1999).

A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).[4] Unless the petitioner clearly alerts the state court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *see also Lyons v. Crawford*, 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present federal claim); *Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). However, if a petitioner does not label his claim as federal, the mere citation to a state case that engages in both a state and federal constitutional analysis does not suffice to exhaust the federal claim. *See Fields v. Washington*, 401 F.3d 1018, 1022 (9th Cir.), *cert. denied*, 126 S. Ct. 738 (2005). If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

---

[4]     Resolving whether a petitioner has fairly presented his claim to the state court is an intrinsically federal issue to be determined by the federal court. *See Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995); *Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir. 1994).

A habeas petitioner's claims may be precluded from federal review in either of two ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.  *Coleman*, 501 U.S. at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Coleman*, 501 U.S. at 735 n.1.  This is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.  *See id*. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.");  *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court.  Rule 32.2 provides, in part:

> a.  Preclusion.  A defendant shall be precluded from relief under this rule based upon any ground:
>
> . . . .
>
> (2)  Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> <u>(3)  That has been waived at trial, on appeal, or in any previous collateral proceeding.</u>
>
> b.  Exceptions.  Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these sub-sections] is to be raised in a successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner.  If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (West 2006) (emphasis added).  Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior petition for post-conviction relief.  Only if a claim falls within certain exceptions

1   (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was
2   omitted from a prior petition or not presented in a timely manner will the preclusive effect
3   of Rule 32.2 be avoided.  Ariz. R. Crim. P. 32.2(b), 32.4(a).

4        Therefore, in the present case, if there are claims which have not been raised
5   previously in state court, the Court must determine whether Petitioner has state remedies
6   currently available to him pursuant to Rule 32.  *See Ortiz v. Stewart*, 149 F.3d 923, 931 (9th
7   Cir. 1998) (stating that the district court must consider whether the claim could be pursued
8   by any presently available state remedy).  If no remedies are currently available, petitioner's
9   claims are "technically" exhausted but procedurally defaulted.  *Coleman*, 501 U.S. at 732,
10   735 n.1.  In addition, if there are claims that were fairly presented in state court but found
11   defaulted on state procedural grounds, such claims also will be found procedurally defaulted
12   in federal court so long as the state procedural bar was independent of federal law and
13   adequate to warrant preclusion of federal review.  *Harris v. Reed*, 489 U.S. 255, 262 (1989).
14   A state procedural default is not independent if, for example, it depends upon an antecedent
15   federal constitutional ruling.  *See Stewart v. Smith*, 536 U.S. 856 (2002) (per curiam).  A state
16   bar is not adequate unless it was firmly established and regularly followed at the time of the
17   purported default.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

18        Because the doctrine of procedural default is based on comity, not jurisdiction, federal
19   courts retain the power to consider the merits of procedurally defaulted claims.  *Reed v. Ross*,
20   468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of
21   procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure
22   to properly exhaust in state court and prejudice from the alleged constitutional violation, or
23   shows that a fundamental miscarriage of justice would result if the claim were not heard on
24   the merits in federal court.  *Coleman*, 501 U.S. at 750.

25        Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some
26   objective factor external to the defense impeded counsel's efforts to comply with the State's
27   procedural rule."  *Id*. at 753.  Objective factors which constitute cause include interference
28   by officials which makes compliance with the state's procedural rule impracticable, a

1    showing that the factual or legal basis for a claim was not reasonably available to counsel,

2    and constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488

3    (1986). "Prejudice" is actual harm resulting from the alleged constitutional error or violation.

4    *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice resulting

5    from a procedural default, a habeas petitioner bears the burden of showing not merely that

6    the errors at his trial constituted a possibility of prejudice, but that they worked to his actual

7    and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

8    *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner cannot meet the cause and

9    prejudice standard, the Court still may hear the merits of procedurally defaulted claims if the

10   failure to hear the claims would constitute a "fundamental miscarriage of justice." *Sawyer*

11   *v. Whitley*, 505 U.S. 333 (1992).

12                          **PROCEDURAL STATUS OF CLAIMS**

13          The Court reviews the procedural status of all the claims for which evidentiary

14   development is sought: Claims 1, 2, 4-6 and 9. Respondents concede that Claims 1 (in part),

15   4 (in part), 5, and 9 (in part) are properly exhausted. However, Respondents contest

16   exhaustion regarding the remainder, which are discussed below.

17   **Fifth Amendment Due Process Claims**

18          With respect to claims alleging that his due process rights under the Fifth Amendment

19   were violated, it is the Fourteenth Amendment, not the Fifth Amendment that protects a

20   person against deprivations of due process by a state. *See* U.S. Const. amend. XIV, § 1 ("nor

21   shall any state deprive any person of life, liberty, or property without due process of law");

22   *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (stating that the Fifth

23   Amendment prohibits the federal government from depriving persons of due process, while

24   the Fourteenth Amendment explicitly prohibits deprivations without due process by the

25   several States). Because the Fifth Amendment Due Process Clause does not provide a

26   cognizable ground for relief regarding Petitioner's state court conviction, the allegations that

27   the Fifth Amendment Due Process Clause was violated will be dismissed; it will not be

28   discussed below with respect to the individual claims.

**Eighth Amendment Claims**

        With respect to claims where Petitioner alleges that his right to be free of cruel and unusual punishment pursuant to the Eighth Amendment was violated, the right to be free of cruel and unusual punishment, by definition, is a protection related to the imposition or carrying out of a sentence. In other words, the protection afforded by the Eighth Amendment does not attach until a person is convicted and subject to punishment by the state. *See Ingraham v. Wright*, 430 U.S. 651, 664, 667, 671 n.40 (1977) (summarizing that the Eighth Amendment circumscribes only the type of punishment imposable on those convicted, punishment that is grossly disproportionate to the crime and what can be criminalized and punished); *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979) (noting that the Eighth Amendment has no application to pretrial detainees). There is no cognizable claim that Petitioner's rights under the Eighth Amendment were violated as to claims relating solely to his conviction. Because the Eighth Amendment does not provide a cognizable ground of relief regarding conviction-related claims, the allegations that the Eighth Amendment was violated will be dismissed as to Claims 1 and 4 and will not be discussed further with respect to those claims.

**Discussion of Individual Claims**

    **Claim 1**

        In Claim 1, Petitioner contends that the trial court violated his rights under the Sixth and Fourteenth Amendments when it denied his motion for a change of venue. (Dkt. 52 at 39.) Specifically, Petitioner alleges that a change of venue should have been granted due to prejudicial pretrial publicity and jurors seeing him shackled while being transported from the jail to the courtroom. (*Id*. at 39-45.) Respondents concede that the pretrial publicity aspect of Claim 1 is exhausted but deny exhaustion regarding the shackling aspect. (Dkt. 68 at 45.)

        Petitioner concedes that he did not exhaust the shackling aspect of Claim 1 to the Arizona Supreme Court. (Dkt. 52 at 43; *see* PR Doc. 1 at 4-18.) Consequently, the Court must determine whether Petitioner has remaining state court remedies or whether the shackling aspect of Claim 1 is technically exhausted but procedurally defaulted. Rules 32.2(b) and 32.4(a) of the Arizona Rules of Criminal Procedure provide that a petitioner may

only file a successive, untimely PCR petition based on claims that fall within the exceptions to preclusion set forth in Rule 32.1(d)-(h).[5] Absent an applicable exception, which Petitioner does not assert, Petitioner's shackling claim is now foreclosed from being raised in state court. *See Beaty v. Stewart*, 303 F.3d 975, 987 & n.5 (9th Cir. 2002) (finding no available state court remedies and noting that petitioner did not raise any exceptions to Rule 32.2(a); *see also Ortiz*, 149 F.3d at 931 (affirming the district court's conclusion that petitioner did not have an available state court remedy for claim that had never before been presented to the state courts despite opportunity).  Because the Arizona Supreme Court did not have a fair opportunity to rule on the shackling aspect of Claim 1, and Petitioner may not exhaust it now, it is technically exhausted but procedurally defaulted.  *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1; *see also Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000) (finding that state prisoner's claims of ineffective assistance of counsel ("IAC") not previously presented to state supreme court were procedurally barred due to state's procedural requirements).

Ineffective Assistance of PCR Counsel as Cause

As cause to excuse the procedural default of the shackling aspect of Claim 1, Petitioner alleges that PCR counsel was ineffective for failing to present this claim in state court. (Dkt. 52 at 44-45; Dkt. 73 at 19.)  Specifically, Petitioner alleges that PCR counsel, Matthew Newman, failed to present this claim due to a conflict of interest because counsel's brother was a Deputy Sheriff for the La Paz County Sheriff's Department and had some involvement in the county's investigative proceedings against Petitioner in this case and because Mr. Newman's wife was the Clerk of Court of La Paz County Superior Court during

---

[5]        Arizona's preclusion rule is independent of federal law, *see Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam), and the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its preclusion rules such that they are an adequate bar to federal review of a claim. *See Ortiz*, 149 F.3d at 932 (finding Rule 32.2(a)(3) regularly followed and adequate); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (same); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (previous version of Arizona's preclusion rules "adequate"); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (same).

1    the relevant time period.[6]  (Dkt. 52 at 44-45.)

2          IAC can represent sufficient cause only when it rises to the level of an independent

3    constitutional violation.  *Coleman*, 501 U.S. at 755.  When a petitioner has no constitutional

4    right to counsel, there can be no constitutional violation arising out of ineffectiveness of

5    counsel.  *Id.* at 752.  There is no constitutional right to counsel in state PCR proceedings.  *See*

6    *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Murray v. Giarratano*, 492 U.S. 1, 7-12

7    (1989) (the Constitution does not require states to provide counsel in PCR proceedings even

8    when the putative petitioners are facing the death penalty); *Bonin v. Vasquez*, 999 F.2d 425,

9    429-30 (9th Cir. 1993) (refusing to extend the right of effective assistance of counsel to state

10   collateral proceedings).

11         In the context of IAC of PCR counsel, the Ninth Circuit has considered and rejected

12   the argument that cause exists to overcome a procedural default where PCR counsel, due to

13   an alleged conflict of interest, failed to assert a claim during PCR proceedings.  *See Ortiz*,

14   149 F.3d at 932; *Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996); *Moran v. McDaniel*,

15   80 F.3d 1261, 1271 (9th Cir. 1996); *Bonin v. Calderon*, 77 F.3d 1155, 1158-59  (9th Cir.

16   1996)).[7]  Moreover, even if the inaction of PCR counsel could have some effect on the issue

17

18         [6]      Following the appointment of Matthew Newman as PCR counsel, Petitioner,
19   *pro per*, filed a motion before the Arizona Supreme Court asserting that Mr. Newman had
     a conflict of interest, in part because counsel's brother was involved in the criminal
20   investigation against him.  In a pleading submitted to the Arizona Supreme Court, PCR
     counsel acknowledged that his brother, Michael Newman, had an early role in the
21   investigative proceedings against Petitioner.  (AP doc. 32, Ariz. S. Ct. No. CR-93-0111-AP.)
22   PCR counsel further indicated that he had no contact with his brother about the case, his
     brother was not listed as a witness by either the prosecution or the defense, and he did not
23   believe that a conflict of interest existed.  (*Id.*, AP doc. 33.)  The Arizona Supreme Court
24   denied Petitioner's *pro per* motion.  (*Id.*, AP doc. 34.)

25         [7]      *Manning v. Foster*, 224 F.3d 1129 (9th Cir. 2000) is not to the contrary.  In
26   *Manning*, the Ninth Circuit reiterated that the actions or omissions of PCR counsel cannot
     constitute cause to overcome a procedural default.  *Id.* at 1133 (stating that "any
27   ineffectiveness of Manning's attorney in the post-conviction process is not considered cause
     for the purposes of excusing the procedural default at that stage").  In *Manning*, rather, the
28   court held that where direct appeal counsel actually interfered with the petitioner's ability to

of cause, there are no facts that Petitioner's PCR counsel actually failed to further Petitioner's interests regarding his shackling claim.   Rather, the record shows that Petitioner's counsel closely investigated whether any of his trial jurors witnessed him in shackles.  After a thorough investigation, counsel concluded that the claim had no merit and withdrew it from further consideration.  (*See* ROA-PCR 3, 7, 11, 16, 18-19, 38, 42, 44, 93, PR Doc. 1 at 4.)  In summary, PCR counsel's alleged ineffectiveness does not constitute cause.

Next, Petitioner contends that Arizona court rules render the PCR proceeding as part of a mandatory bifurcated appellate process for capital cases with a statutory right to counsel and, therefore, Fourteenth Amendment due process requires PCR counsel to be effective. (Dkt. 73 at 11-13.)  The Court is unpersuaded.  Petitioner cites no case, and the Court has found none, which holds that a state is required by the federal constitution to provide counsel in PCR proceedings.  The fact that a state may, "as a matter of legislative choice," *Ross v. Moffitt*, 417 U.S. 600, 618 (1974), provide for counsel in discretionary appeals following a first appeal of right does not extend the Sixth Amendment's guarantee of effective counsel to discretionary appeals.  *See Evitts v. Lucey*, 469 U.S. 387, 394, 397 n.7 (1985); *Finley*, 481 U.S. at 559 (where a state provides a lawyer in a state post-conviction proceeding, it is not "the Federal Constitution [that] dictates the exact form such assistance must assume," rather, it is in a state's discretion to determine what protections to provide).  Further, the Ninth Circuit has held explicitly that "ineffective assistance of counsel in habeas corpus proceedings does not present an independent violation of the Sixth Amendment enforceable against the states through the Due Process Clause of the Fourteenth Amendment."  *Bonin*, 77 F.3d at 1160.  Since Petitioner's PCR proceeding took place after his appeal of right, it was a discretionary proceeding that did not confer a constitutional right to the effective assistance of counsel.  Thus, even assuming PCR counsel's performance did not conform to

_____

initiate post-conviction proceedings, such conduct by constitutionally-entitled counsel may constitute cause to overcome a procedural default.

minimum standards, it did not violate the federal constitution and cannot excuse the procedural default of any claims. Because Petitioner has not established cause to overcome the default, the Court need not analyze prejudice. *See Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

<u>Fundamental Miscarriage of Justice</u>

Petitioner argues there will be a fundamental miscarriage of justice if the shackling aspect of Claim 1 is not heard on the merits because he is actually innocent of premeditated first degree murder. (Dkt. 73 at 15.) Petitioner does not rely on any new reliable evidence in support of his fundamental miscarriage of justice argument. Rather, he argues that he did not have the requisite mental state for imposition of the death penalty. Under Petitioner's theory, because the trial court did not make a finding under *Enmund/Tison*[8] that he intended to kill the victim, he lacked the requisite mental state and therefore is innocent of the crime of premeditated first degree murder. (Dkt. 73 at 14-15.)

"The miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). To demonstrate a fundamental miscarriage of justice, Petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To establish the requisite probability, Petitioner must prove with *new reliable evidence* that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." <u>Id.</u> at 324, 327 (emphasis added). New evidence presented in support of a fundamental miscarriage may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id*. at 324, *see also House v. Bell*, 126 S. Ct. 2064, 2077 (2006)

---

[8]    In *Enmund v. Florida*, 458 U.S. 782 (1982) and *Tison v. Arizona*, 481 U.S. 137 (1987), the U.S. Supreme Court established the requisite mental state for imposition of the death penalty. Under *Enmund/Tison*, the Eighth Amendment bars imposition of the death penalty against defendants who did not themselves kill, attempt to kill, or intend to kill, unless the defendant both possesses a mental state of reckless indifference to the value of human life and is a major participant in the felony that resulted in the murder.

1   (stating that a fundamental miscarriage of justice contention must involve evidence that the

2   trial jury did not have before it).

3          Petitioner has offered no new reliable evidence; only an argument that he is "legally"

4   not guilty of premeditated first degree murder.  Such argument is patently insufficient to

5   establish a fundamental miscarriage of justice because, at best, it only contends that he may

6   be legally innocent.   Absent new reliable evidence of actual innocence, Petitioner's

7   fundamental miscarriage of justice contention is meritless.  *See House*, 126 S. Ct. at 2077.

8          Thus, for Claim 1, Petitioner's change of venue claim based on pretrial publicity is

9   exhausted and available for review on the merits; Petitioner's change of venue claim based

10  on jurors seeing him shackled while being transported from the jail to the courtroom is

11  procedurally barred and will be dismissed with prejudice.

12  **Claim 2**

13         Petitioner alleges that he was tried and sentenced despite being mentally incompetent

14  and that his trial counsel performed ineffectively by not requesting a competency hearing

15  prior to his trial or his sentencing in violation of the Sixth and Fourteenth Amendment.  (Dkt.

16  52 at 45-50.)  Petitioner concedes that he did not exhaust the IAC aspect of Claim 2 in state

17  court.   (Dkt. 52 at 47.)   Regarding his claim of actual incompetence, he contends that

18  Arizona's general rules of procedural default do not apply to this aspect of Claim 2.  (Dkt.

19  78 at 20.)  The Court disagrees.

20         The Ninth Circuit has rejected the argument that mental incompetency claims can

21  never be procedurally defaulted.  A claim alleging actual incompetence to stand trial is

22  subject to the same state procedural default rules as other claims. *See Martinez-Villareal*, 80

23  F.3d at 1306-07 (rejecting the argument that mental incompetency claims can never be

24  procedurally defaulted and upholding procedural default conclusion of the state court

25  regarding petitioner's incompetence to stand trial claim).

26         Petitioner may not exhaust Claim 2 now because he does not have an available state

27  court remedy. *See* Ariz. R. Crim. P. 32.2 and 32.4(a) and discussion *supra* Claim 1.  Claim

28  2 is technically exhausted but procedurally defaulted.  Petitioner has not argued that either

1  cause and prejudice or a fundamental miscarriage of justice excuses the default.  Therefore,

2  Claim 2 is procedurally barred and will be dismissed with prejudice.

3  **Claim 4**

4  Petitioner contends that prosecutorial misconduct occurred during closing argument

5  when the prosecutor improperly vouched for two witnesses, Karen Thompson and Gene

6  Vernoy, and improperly elicited testimony from Detective Masino to the effect that Petitioner

7  had not been truthful in his interview with police.  (Dkt. 52 at 53-59.)  Respondents concede

8  that Petitioner exhausted the allegations of improper vouching.  (Dkt. 68 at 57.)  Petitioner

9  concedes that he did not exhaust the allegations regarding improper eliciting of testimony

10  from Detective Masino.  (Dkt. 73 at 25.)  Absent an applicable exception, which Petitioner

11  does not assert, Petitioner's allegations regarding improper eliciting of testimony from

12  Detective Masino are now foreclosed from being raised in state court by Arizona Rule of

13  Criminal Procedure 32.2 and 32.4(a).  *See supra* Claim 1.  Thus, these allegations are

14  technically exhausted but procedurally defaulted.  Petitioner maintains that he has cause to

15  overcome any procedural default because counsel at his PCR proceeding labored under a

16  conflict of interest and performed ineffectively.  (Dkt. 73 at 25.)  This argument is rejected

17  for the same reasons as stated in Claim 1. Absent cause, there is no need to consider

18  prejudice. Additionally, Petitioner argues there will be a fundamental miscarriage of justice

19  if Claim 4 is not heard on the merits because he is actually innocent of premeditated first

20  degree murder.  This argument is rejected for the same reasons as stated in Claim 1.

21  Thus, for Claim 4, the allegations regarding improper vouching for two witnesses are

22  exhausted and available for review on the merits; the allegations regarding improper eliciting

23  of testimony from Detective Masino are procedurally barred and will be dismissed with

24  prejudice.

25  **Claim 6**

26  Petitioner alleges that the trial court violated his rights under the Sixth, Eighth and

27  Fourteenth Amendments by improperly considering victim impact evidence at his sentencing.

28  (Dkt. 52 at 93-95.)  Petitioner concedes that he did not present Claim 6 to the state courts.

1   (Id. at 93.)  Petitioner may not exhaust Claim 6 now because he does not have an available

2   state court remedy.  *See supra* Claim 1.  Therefore, Claim 6 is technically exhausted but

3   procedurally defaulted.   (*Id.*)   Petitioner presents the same cause and prejudice and

4   miscarriage of justice arguments that he did for Claim 1.  (Dkt. 73 at 26.)  These arguments

5   are rejected for the same reasons as stated in Claim 1.  Claim 6 is procedurally barred and

6   will be dismissed with prejudice.

7       **Claim 9**

8       In Claim 9, Petitioner alleges that trial counsel performed ineffectively in violation

9   of the Sixth, Eighth and Fourteenth Amendments at his trial and sentencing in the following

10  respects:

11      (a)   Trial counsel presented an alibi defense he knew was false;

12      (b)   Trial counsel presented an alibi defense when he had a viable diminished
              capacity defense;

13
14      (c)   Trial counsel failed to vigorously attack the co-defendant's false version of the
              events of the murder;

15      (d)   Trial counsel failed to present an abundance of available and relevant
              mitigating evidence at the sentencing phase;

16
17      (e)   Trial counsel failed to obtain and present a meaningful psychiatric evaluation
              of Petitioner at the sentencing phase.

18  (Dkt. 52 at 109-89.)  Respondents concede that these IAC allegations, except for sub-claim

19  (c), have been fairly presented and exhausted in the state courts.  (Dkt 68 at 82.)

20      In Arizona, fair presentation requires that capital petitioners present their allegations

21  not only to the PCR court but also to the Arizona Supreme Court upon denial of relief.  *See*

22  *O'Sullivan*, 526 U.S. at 848; *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999) (per curiam)

23  (holding that capital petitioners must seek review in Arizona Supreme Court to exhaust

24  claims).  In his petition for review, as part of the introduction, Petitioner described Claim 9(c)

25  as having been denied by the PCR court.  (*See* PR Doc. 1 at 3.)  Following this introductory

26  section, he presented the claims for which he sought review.  Petitioner did not include Claim

27  9(c).  (*See* PR Doc. 1 at 4-18.)  Therefore, he did not fairly present it to the Arizona Supreme

28  Court.  Petitioner may not exhaust Claim 9(c) now because he does not have an available

state court remedy.  *See* Ariz. R. Crim. P. 32.2 and 32.4(a).  Consequently, Claim 9(c) is technically exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 732, 735 n.1.

Petitioner presents the same cause and prejudice and miscarriage of justice arguments that he did for Claim 1.  (Dkt. 73 at 31-32.)  These arguments are rejected for the same reasons as stated in Claim 1.  Claim 9(c) is procedurally barred and will be dismissed with prejudice.  Claims 9(a), (b), (d) and (e) are available for review on the merits.

<u>**Summary of Procedural Status Findings**</u>

Claims 1 (shackling), 2, 4 (improper eliciting of testimony from Detective Masino), 6 and 9(c) are procedurally barred.  Accordingly, Petitioner's motions for evidentiary development as to those claims are denied.  The Court turns now to Petitioner's motions for evidentiary development of Claims 1 (pretrial publicity), 4 (improper vouching), 5 and 9(a), (b), (d) and (e).

<u>**LEGAL STANDARD FOR EVIDENTIARY HEARING,<br>EXPANSION OF THE RECORD AND DISCOVERY**</u>

<u>**Evidentiary Hearing**</u>

The decision whether to grant an evidentiary hearing when there are material facts in dispute is generally at the discretion of the district court judge.  *See Townsend v. Sain*, 372 U.S. 293, 312, 318 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *and limited by* § 2254(e)(2); *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required).  However, a judge's discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA.  *See Williams v. Taylor*, 529 U.S. 420 (2000).

Section 2254 provides that:

> *If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*
>
> (A) the claim relies on –
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432.  "The purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence." *Id*. at 435.  The Court found that this rule served AEDPA's goal of furthering comity in that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id*.; *see also Cardwell v. Netherland*, 971 F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings"), *aff'd Cardwell v. Greene*, 152 F.3d 331 (4th Cir. 1998), *overruled on other grounds*, *Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000).   In correlation, subsection (e)(2) allows factual development when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." *Williams*, 529 U.S. at 432; *see Baja*, 187 F.3d at 1078-79.

In compliance with § 2254(e)(2), when the factual basis for a particular claim has not been fully developed in state court, the first question for a district court in evaluating whether to grant an evidentiary hearing on the claim is whether the petitioner was diligent in attempting to develop its factual basis.  *See Baja*, 187 F.3d at 1078 (quoting *Cardwell v. Greene*, 152 F.3d at 337).  The Supreme Court set an objective standard for determining "diligence," such that the requirement is dependent upon whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue

claims in state court." *Williams*, 529 U.S. at 435.  For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. *See id.* at 438-40 (counsel lacked diligence because he was on notice of possibly material evidence and conducted only a cursory investigation); *Alley v. Bell*, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised claims of judicial bias and jury irregularities in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437; *see Bragg v. Galaza*, 242 F.3d 1082, 1090 (9th Cir. 2001), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on ineffective counsel claim because petitioner did not request an evidentiary hearing, and brought claim only on appeal not in a collateral proceeding).  However, the mere request for an evidentiary hearing may not be sufficient to establish diligence if a reasonable person would have taken additional steps.  *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (petitioner requested hearing but found not diligent because he failed to present affidavits of family members that were easily obtained without court order and with minimal expense); *see also Koste v. Dormire*, 345 F.3d 974, 985-86 (8th Cir. 2003) (lack of diligence despite hearing request because petitioner made no effort to develop the record or assert any facts to support claim that his counsel was ineffective for knowing of and failing to investigate his psychiatric condition), *cert. denied*, 124 S. Ct. 2070 (2004).  If an evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct such a hearing does not in itself demonstrate lack of diligence.  *See Cardwell*, 152 F.3d at 338.

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions.  If, however, the petitioner has not failed to develop the factual basis of his claim in state court, the Court will then

proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in *Townsend*.  372 U.S. 293; *see Baja*, 187 F.3d at 1078 (quoting *Cardwell*, 152 F.3d at 337).

Pursuant to *Townsend*, a federal district court *must* hold an evidentiary hearing in a § 2254 case when the facts are in dispute if: (1) the petitioner "alleges facts which, if proved, would entitle him to relief," and (2) the state court has not, "after a full hearing reliably found the relevant facts."  *Townsend*, 372 U.S. at 312-13.  In addition, the Court established six circumstances under which there is presumptively no "full and fair hearing" at the state level:

(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; or

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*See id.* at 313.  In any other case in which the facts are in dispute and diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." *Id.* at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and ordinarily should, accept the facts as found in the hearing").

**Expansion of the Record**

Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court to expand the record to include additional material relevant to the determination of the merits of a petitioner's claims.  Rule 7 provides:

The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath, to written

interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

Rule 7(b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."  Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; *see also Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977).

Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present new evidence through a Rule 7 motion to expand the record to the same extent that it limits the availability of an evidentiary hearing.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) (holding that the conditions of § 2254(e)(2) generally apply to petitioners seeking relief based on new evidence, even when they do not seek an evidentiary hearing) (citing *Holland v. Jackson*, 124 S. Ct. 2736, 2737 (2004) (per curiam).  Thus, when a petitioner seeks to introduce, through a Rule 7 motion, new affidavits and other documents never presented in state court for the purpose of establishing the factual predicate of a claim, he must show both diligence in developing the factual basis in state court and relevancy of the evidence to his claim.  If diligence is not shown, the requirements of § 2254(e)(2) must be satisfied before the Court can consider expansion of the record.  To find otherwise would allow circumvention of the AEDPA's restriction against federal habeas courts holding evidentiary hearings in cases where the petitioner is at fault for failing to develop the facts in state court.

When a petitioner seeks to expand the record for reasons other than to introduce evidence to bolster the merits of her claim, the strictures of § 2254(e)(2) may not apply.  *See Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001) (finding it nonsensical to apply § 2254(e)(2) when expansion of the record is used for reasons other than to introduce new factual information on the merits of a claim).  For example, expansion of the record may be appropriate to cure omissions in the state court record, *see Dobbs v. Zant*, 506 U.S. 357, 359 (1993) (per curiam) (reversing for failure to supplement the record with a late-discovered

1    transcript); *see also* Rule 5, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (directing

2    answering party to submit portions of record it deems relevant), or to establish diligence

3    pursuant to § 2254(e)(2).  *See Boyko*, 259 F.3d at 792.

4          In evaluating the instant motion, the Court must first determine whether Petitioner is

5    seeking expansion of the record to achieve the same end as an evidentiary hearing.  If so, the

6    Court must then assess whether Petitioner demonstrated diligence in developing the factual

7    basis of the claim in state court and, if not, whether he meets the requirements of

8    § 2254(e)(2).  In addition, the Court must determine whether the proffered evidence is

9    relevant to a determination of the claim's merits, *see* Rule 7(a), 28 U.S.C. foll. § 2254, and

10   whether the new evidence fundamentally alters the claim such that it is rendered

11   unexhausted.  *See Vasquez*, 474 U.S. at 258-59.  If Petitioner is seeking expansion for some

12   other purpose, such as curing omissions from the state court record, establishing cause and

13   prejudice or a fundamental miscarriage of justice for a procedural default, or demonstrating

14   diligence for purposes of showing the inapplicability of § 2254(e)(2), the Court need only

15   evaluate relevance.

16          **Discovery**

17          Rule 6(a) of the Rules Governing Section 2254 Cases ("Habeas Rules") provides that

18   "[a] judge may, for *good cause*, authorize a party to conduct discovery under the Federal

19   Rules of Civil Procedure, and may limit the extent of discovery."  Rule 6(a), 28 U.S.C. foll.

20   § 2254 (emphasis added).  Thus, unlike the usual civil litigant in federal court, a habeas

21   petitioner is not entitled to discovery "as a matter of ordinary course," *Bracy v. Gramley*,

22   520 U.S. 899, 904 (1997); *see also Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999),

23   and a habeas court should not allow a habeas petitioner "to use federal discovery for fishing

24   expeditions to investigate mere speculation." *Calderon v. United States Dist. Court for the*

25   *Northern Dist. of Cal. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Aubut v. State*

26   *of Maine*, 431 F.2d 688, 689 (1st Cir. 1970) ("[h]abeas corpus is not a general form of relief

27   for those who seek to explore their case in search of its existence").  Pursuant to *Bracy*,

28   application of Rule 6(a) is relatively straightforward, whether a petitioner has established

1    "good cause" for discovery requires a habeas court to determine the essential elements of the

2    petitioner's substantive claim and evaluate whether "specific allegations before the court

3    show reason to believe that the petitioner may, if the facts are fully developed, be able to

4    demonstrate that he is . . . entitled to relief." *Id*. at 908-09 (quoting *Harris v. Nelson*, 394

5    U.S. 286, 300 (1969)).

6                          **MOTIONS DISCUSSION**

7            The Court now assesses whether expansion of the record, discovery and/or an

8    evidentiary hearing should be granted with respect to the remaining properly exhausted

9    claims for which evidentiary development is sought.

10       **Claim 1**

11           In Claim 1, Petitioner contends that the trial court violated his constitutional rights

12   when it denied his motion for a change of venue due to prejudicial pretrial publicity.  (Dkt.

13   52 at 39.)  Petitioner requests discovery so that his investigator may interview and obtain

14   statements from the jurors serving at his trial in order to show the extent of pretrial publicity

15   they were exposed to and any resulting prejudice.  (Dkt. 78 at 13.)  Petitioner requests an

16   evidentiary hearing so that those jurors may testify regarding the effect of such publicity.  (*Id.*

17   at 14.)

18           The Court denies Petitioner's requests.  An evidentiary hearing is not required on an

19   issue properly resolved by reference to the state court record.  *See Totten v. Merkle*, 137 F.3d

20   1172, 1176 (9th Cir. 1998).  Regarding Claim 1, Petitioner bears the burden of proving

21   whether the pretrial publicity in the trial record supports either a finding of presumed

22   prejudice or actual prejudice.  *See Daniels v. Woodford*, 428 F.3d 1181, 1210 (9th Cir. 2005)

23   ("When sitting in habeas corpus [the duty of the federal court] is to make an independent

24   review of the record to determine whether there was such a degree of prejudice against the

25   petitioner that a fair trial was impossible.  Thus, the reviewing federal court must conduct an

26   independent review of news reports about the case.") (further citation omitted); *see also State*

27   *v. Bible*, 175 Ariz. 549, 563-67, 858 P.2d 1152, 1166-70 (1993) (reviewing the trial record

28   regarding pretrial publicity in order to determine whether such publicity violated defendant's

right to a fair trial under the Sixth and Fourteenth Amendments).  Because Claim 1 will be properly resolved by reference to the state court record, Petitioner is not entitled to discovery and/or an evidentiary hearing.

**Claim 4**

In Claim 4, Petitioner contends that prosecutorial misconduct occurred when the prosecutor, during closing argument, improperly vouched for the credibility of two witnesses, Karen Thompson and Gene Vernoy.  Petitioner requests discovery so that his investigator may interview and obtain statements from jurors serving at his trial in order to determine whether they properly followed jury instructions that were provided to them regarding their duty to evaluate the credibility of witnesses.  (Dkt. 78 at 15.)  Petitioner requests an evidentiary hearing so that those jurors may testify regarding whether they followed those jury instructions.  (*Id.* at 16.)

The Court denies Petitioner's requests.  Petitioner's claim of prosecutor misconduct will be properly resolved by reference to the state court record.  *See Turner v. Chavez*, 586 F.2d 111 (9th Cir. 1978) (stating that habeas review of a prosecutor misconduct claim involves a thorough review of the state court record regarding the allegations); *see also Darden v. Wainwright*, 477 U.S. 168, 181-83 (stating that habeas review of a prosecutor misconduct claim necessarily includes a careful review of the totality of the state court record to determine whether the alleged misconduct denied petitioner a fair trial).  An evidentiary hearing is not required on an issue resolved by reference to the state court record.  *See Totten*, 137 F.3d at 1176.

Further, it is firmly established in the common law that juror testimony is inadmissible to impeach a jury verdict. *See Tanner v. United States*, 483 U.S. 107, 117 (1987).  Exceptions to the rule are recognized only in situations in which an "extraneous influence" is alleged to have affected the jury's verdict.  *Id.*  Strong policy considerations underlie the rule:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding.  Jurors would be harassed and beset by the defeated

1
2
3

> party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation – to the destruction of all frankness and freedom of discussion and conference.

4   *Id.* at 119-20 (quoting *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915)).

5       The rule has been codified in both the Arizona Rules of Criminal Procedure and the

6   Federal Rules of Evidence. Arizona prohibits the admission of testimony or affidavits that

7   inquire "into the subjective motives or mental processes which led a juror to assent or dissent

8   from the verdict." Ariz. R. Crim. P. 24.1(d). The federal rules likewise prohibit testimony

9   "as to any matter or statement occurring during the course of the jury's deliberations or the

10  effect of anything upon that or any other juror's mind or emotions as influencing the juror

11  to assent to or dissent from the verdict." Fed. R. Evid. 606(b).

12      It is clear from both the common law and state and federal rules that the juror

13  evidence Petitioner wishes to discover in support of his habeas claims is improper. The

14  Court summarily rejects Petitioner's request that he be allowed to investigate whether the

15  jurors properly followed the jury instructions given to them. This is not "extraneous"

16  evidence and thus is not permissible under Rule 606(b)'s exception for "extraneous

17  prejudicial information that was improperly brought to the jury's attention." *Id.* Scores of

18  cases and the plain language of the rule limit the exception to evidence of an extraneous

19  influence on a jury. *E.g.*, *Tanner*, 483 U.S. at 117 (listing cases). Based on the

20  inadmissibility of juror testimony and because Claim 4 will be properly resolved by reference

21  to the state court record, Petitioner is not entitled to discovery and/or an evidentiary hearing.

22  **Claim 5**

23      In Claim 5(b), Petitioner presents both a facial and an "as applied" challenge to the

24  state court's finding that the aggravating circumstance, A.R.S. § 13-703(F)(2), was

25  established at sentencing. (Dkt. 52 at 65-68.) Under Arizona law, the (F)(2) aggravating

26  circumstance is established when a defendant has a prior felony conviction that involved the

27  use or threat of violence. *See Lee*, 185 Ariz. at 557, 917 P.2d at 700. Petitioner seeks

28  evidentiary development, asking the Court to expand the record to include documents from

his prior felony conviction proceedings that demonstrate that as part of his plea agreement to robbery, his felony conviction was classified as a non-dangerous felony. (Dkt. 78 at 30.) Rather than answer Petitioner's expansion of the record request, the Court finds it judicially expedient to examine and deny the merits of this claim.

For properly preserved claims "adjudicated on the merits" by a state court, the AEDPA enacted a more rigorous standard for habeas relief. See Miller-El v. Cockrell, 537 U.S. 322, 337 (2003); Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004) ("Inspired by principles of comity, finality and federalism, AEDPA establishes a highly deferential standard for reviewing state court determinations"). Pursuant to the AEDPA, Petitioner is not entitled to relief on any claim adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To assess a habeas claim under § 2254(d)(1), the Court must identify the "clearly established Federal law," if any, that governs the sufficiency of the claim on habeas review. "Clearly established" federal law includes the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *See id*. at 381. A state court decision is "contrary to" clearly established federal law if it failed to apply the correct controlling Supreme Court authority, or if it applied the correct authority to a case involving facts materially indistinguishable from those in a controlling Supreme Court case but nonetheless reached a different result. *Id*. at 413; *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). To obtain habeas relief under subsection (d)(2), the state court

1   factual determination at issue must be "objectively unreasonable" in light of the evidence

2   presented in the state court proceeding.  Miller-El, 537 U.S. at 340; Davis v. Woodford, 384

3   F.3d 628, 637-38 (9th Cir. 2004).

4          Petitioner's facial challenge contends that the Arizona Supreme Court's construction

5   of A.R.S. § 13-703(F)(2) is unconstitutionally vague in violation of the Eighth Amendment.

6   Petitioner contends that Arizona's construction of (F)(2) actually broadens, rather than

7   narrows, the class of persons eligible for the death penalty.  (Dkt. 52 at 67.)  Specifically,

8   Petitioner contends that the class of eligible persons was broadened when the Arizona

9   Supreme Court expanded (F)(2)'s definition of violence to include force in determining

10  which felons were eligible for the death penalty.  (Id.)  According to Petitioner, the use or

11  threat of force directed against a person as a means of gaining control of property could

12  include a variety of acts that do not involve the use or threat of violence on another person.

13  (Id.)

14         Regarding Petitioner's facial challenge, the U.S. Supreme Court has determined that

15  a constitutionally valid capital sentencing scheme must "genuinely narrow the class of

16  persons eligible for the death penalty and must reasonably justify the imposition of a more

17  severe sentence on the defendant compared to others found guilty of murder."  Zant v.

18  Stephens, 462 U.S. 862, 877 (1983).  The Court explained that a death penalty scheme must

19  provide an "objective, evenhanded and substantively rational way" for determining whether

20  a defendant is eligible for the death penalty.  Id. at 879.

21         Defining specific "aggravating circumstances" is the accepted "means of genuinely

22  narrowing the class of death-eligible persons and thereby channeling the [sentencing

23  authority's] discretion."  Lowenfield v. Phelps, 484 U.S. 231,  244 (1988); see also Blystone

24  v. Pennsylvania, 494 U.S. 299, 306-07 (1990) ("The presence of aggravating circumstances

25  serves the purpose of limiting the class of death-eligible defendants, and the Eighth

26  Amendment does not require that these aggravating circumstances be further refined or

27  weighed by [the sentencer].").  Each defined circumstance must meet two requirements.

28  First, "the [aggravating] circumstance may not apply to every defendant convicted of a

1    murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa v.*

2    *California*, 512 U.S. 967, 972 (1994); *see also Arave v. Creech*, 507 U.S. 463, 474 (1993).

3    Second, "the aggravating circumstance may not be unconstitutionally vague." *Tuilaepa*, 512

4    U.S. at 972; *see Arave*, 507 U.S. at 473; *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

5    Because the proper degree of definition of eligibility factors is often not susceptible of

6    mathematical precision, constitutional review of an aggravating circumstance for vagueness

7    is quite deferential. *See Tuilaepa*, 512 U.S. at 973. A state court's statutory construction of

8    an aggravating factor avoids vagueness when it provides meaningful guidance to the

9    sentencer. *See Walton*, 497 U.S. at 655.

10       At sentencing, Petitioner's 1987 prior conviction for robbery, pursuant to A.R.S. § 13-

11   1902(A), was used to establish that he met the requirements for the (F)(2) aggravating

12   circumstance. The Arizona Supreme Court discussed Petitioner's robbery conviction and his

13   eligibility for the (F)(2) aggravating factor, as follows:

14              We have held that to qualify under this section the prior conviction
         must be for a felony that by statutory definition involves the use or threat of
15       violence. *State v. Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983).
         "Violence" has been defined as "the exertion of any physical force so as to
16       injure or abuse." *State v. Arnett*, 119 Ariz. 38, 51, 579 P.2d 542, 555 (1978).
         A.R.S. § 13-1902(A) reads as follows: A person commits robbery if in the
17       course of taking any property of another from his person or immediate
         presence and against his will, such person threatens or uses force against any
18       person with intent either to coerce surrender of property or to prevent
         resistance to such person taking or retaining property. Thus, the crime requires
19       the use or threat of force. "Fear of force is an element of robbery and the
         conviction of robbery presumes that such fear was present." *State v. Watson*,
20       120 Ariz. 441, 448, 586 P.2d 1253, 1260 (1978), *cert. denied*, 440 U.S. 924,
         99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). Because the unwarranted imposition of
21       fear is inherently abusive, a conviction for robbery necessarily involves
         violence or the threat of violence on another person. *See State v. Kemp,* 185
22       Ariz. 52, 64, 912 P.2d 1281, 1293 (1996). Consistent with this view, we have
         repeatedly found that robbery is a crime of violence. *See State v. Ramirez*, 178
23       Ariz. 116, 130, 871 P.2d 237, 251, *cert. denied*, 513 U.S. 968, 115 S.Ct. 435,
         130 L.Ed.2d 347 (1994); *State v. Spencer*, 176 Ariz. 36, 43, 859 P.2d 146, 153
24       (1993), *cert. denied*, 510 U.S. 1050, 114 S.Ct. 705, 126 L.Ed.2d 671 (1994);
         *State v. Tittle*, 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985); *State v. Nash,*
25       143 Ariz. 392, 404, 694 P.2d 222, 234, *cert denied*, 471 U.S. 1143, 105 S.Ct.
         2689, 86 L.Ed.2d 706 (1985); *State v. Watson*, 120 Ariz. at 448, 586 P.2d at
26       1260.

27   *Lee*, 185 Ariz. at 557, 917 P.2d at 700.

28       As defined by the Arizona Supreme Court, the (F)(2) aggravator does not apply to

- 26 -

1  every defendant convicted of a murder, and this Court finds that it is not vague.  *See*

2  *Tuilaepa*, 512 U.S. at 972.  The definition of the (F)(2) aggravating circumstance provides

3  meaningful guidance to the sentencer and makes rationally reviewable the sentence of death

4  imposed.  This is constitutionally sufficient.  *See State v. Walden*, 183 Ariz. 595, 618, 905

5  P.2d 974, 997 (1995) (holding that the definition of the (F)(2) aggravating circumstance

6  fairly excludes some defendants and is not vague).

7  Next, Petitioner contends that no rational trier of fact could have found proof beyond

8  a reasonable doubt that his prior conviction for robbery involved the use or threat of violence

9  on another person.  (Dkt. 52 at 67.)  Consequently, he contends that the state court's finding

10  of the aggravating circumstance was so arbitrary or capricious as to constitute an independent

11  due process and Eighth Amendment violation.  (*Id.* at 68.)

12  Whether a state court misapplied an aggravating factor to the facts of a case at

13  sentencing is a question of state law.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Federal

14  habeas review of a state court's application of a constitutionally narrowed aggravating

15  circumstance is limited to determining whether the state court's finding was so arbitrary or

16  capricious as to constitute an independent due process or Eighth Amendment violation.  *Id*.

17  In *Jeffers*, the Supreme Court held that the appropriate standard of federal habeas review of

18  a state court's application of an aggravating circumstance is the "rational factfinder"

19  standard; i.e., "whether, after viewing the evidence in the light most favorable to the

20  prosecution, any rational trier of fact could have found" the aggravating factor to exist.  Id.

21  (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

22  Thus, the Court resolves Petitioner's challenge by applying the *Jeffers* standard to the

23  conviction used as the basis for the (F)(2) factor.  Regarding Petitioner's 1987 robbery

24  conviction, the record presented by the state indicates that Petitioner was charged with and

25  pled guilty to robbery. (R.T. 2/10/93 at 18-20; 3/8/93 at 24.)  By statutory definition, "A

26  person commits robbery if in the course of taking any property of another from his person

27  or immediate presence and against his will, such person threatens or uses force against any

28  person with intent either to coerce surrender of property or to prevent resistance to such

person taking or retaining property." A.R.S. § 13-1902(A) (1987) (emphasis added).  From this presentation of the offense, which by definition involves threatened or actual force, it is clear that Petitioner's conviction qualified as a "felony in the United States involving the use or threat of violence on another person" under § 13-703(F)(2).  *See Lee*, 185 Ariz. at 557, 917 P.2d at 700.  Based upon the information presented by the State, a "rational factfinder" could have determined that the state proved this aggravating factor as to Petitioner's prior conviction for robbery.  *See Jeffers*, 497 U.S. at 781.  For the reasons set forth above, Petitioner is not entitled to habeas relief on Claim 5(b).

**Claim 9**

In Claim 9, Petitioner alleges that trial counsel performed ineffectively in violation of the Sixth, Eighth and Fourteenth Amendments at his trial and sentencing.  Petitioner exhausted the following sub-claims:

(a) Trial counsel presented an alibi defense he knew was false;

(b) Trial counsel presented an alibi defense when he had a viable diminished capacity defense;

(d) Trial counsel failed to present an abundance of available and relevant mitigating evidence at the sentencing phase;

(e) Trial counsel failed to obtain and present a meaningful psychiatric evaluation of Petitioner at the sentencing phase.

Although Petitioner requests discovery on Claim 9, his motion does not specifically identify the sub-claim(s) for which discovery is sought.   (Dkt. 78 at 17-22, 30-43.)  It appears, however, that discovery requests (f) through (t) relate solely to Claim 9(c), which is procedurally barred.  Therefore, these requests for discovery are denied.

In support of Claims 9(a), (b), (d) and (e), Petitioner seeks an evidentiary hearing and authorization to depose the trial prosecutor, the prosecution's trial investigator, his appellate counsel, the trial judge, his co-defendant, and his defense psychiatrist. (Dkt. 78 at 17-22.) He also seeks records from the La Paz County jail.  (*Id.*)  To further support Claim 9(d), Petitioner seeks to expand the record with new evidence never presented in state court. He seeks to introduce declarations from his mother, sister, brother-in-law, the social history

1   compilation produced by the mitigation specialist appointed for these habeas proceedings,

2   his prison records from incarceration prior to his murder conviction, other medical records,

3   and a declaration from his trial investigator.  (Dkt. 78 at 31; Dkt. 53, Ex. D–K and KK.)[9]

4   <u>Summary of State PCR Proceedings</u>

5   In July 1998, Petitioner initiated PCR proceedings.  Counsel for Petitioner filed a PCR

6   petition in June 1999, which included supporting declarations from Petitioner's mother,

7   father, a neuropsychologist and a neurologist.  (ROA-PCR 3, Ex. 4, 5 and 15.)  Based upon

8   the petition and the supporting declarations, the PCR court ordered an evidentiary hearing

9   on the issues raised in Claims 9(a), (b), (d) and (e).  (ROA-PCR 12.)  In anticipation of the

10  evidentiary hearing, the PCR court appointed Petitioner a mitigation specialist and ordered

11  a further psychiatric evaluation.  (ROA-ME 9/28/00 and ROA-PCR 30.)  In response, the

12  State also obtained an additional psychiatric evaluation of Petitioner.  (ROA-PCR 66, ROA-

13  ME 12/3/01.)

14  In April and May of 2002, a 4-day evidentiary hearing was held.  At the hearing,

15  Petitioner presented the following live witnesses:  Petitioner's trial and appellate counsel, the

16  prosecutor, the prosecution's trial investigator, Petitioner's mother, his mitigation specialist,

17  his ineffective assistance of counsel expert and two psychiatric experts.  Following written

18  closing arguments, the PCR court denied relief in May 2003.

19  <u>Analysis</u>

20  Respondents argue that Petitioner had an opportunity to fully develop Claim 9 during

21  the state PCR evidentiary hearing and that further factual development in this Court is barred

22  due to Petitioner's lack of diligence.  (Dkt. 82 at 17-20.)  Petitioner contends that any failure

23  to develop cannot be attributed to him because his state-appointed PCR counsel was

24  burdened by an actual conflict of interest.  (*Id.*)  As a result of this state-sanctioned conflicted

25  _____

26  [9]     Despite identifying these exhibits in support of his Amended Petition,
Petitioner did not append the declarations of his sister (Ex. E), his brother-in-law (Ex. F), his

27  declaration (Ex. G), or his trial investigator (Ex. KK).  (*See* Dkt. 53.)  The absence of these
declarations does not impact the Court's analysis on the issue of Petitioner's diligence in

28  developing the factual basis of Claim 9 in state court.

1    appointment, he argues that he did not receive effective assistance of counsel during his post-

2    conviction proceedings.  (Dkt. 78 at 32-33.)  Consequently, he maintains that he is entitled

3    to further develop his claims in federal court.

4            In habeas proceedings, 28 U.S.C. § 2254(e)(2) precludes an evidentiary hearing if the

5    failure to develop a claim's factual basis in state court is due to a "lack of diligence, or some

6    greater fault, attributable to the prisoner or the prisoner's counsel."  *Williams*, 529 U.S. at

7    432.  In order to exercise diligence in state court proceedings, a petitioner must make a

8    reasonable attempt, in light of the information available at the time, to investigate and pursue

9    claims in state court.  *Id.* at 436.  If the prisoner himself contributes to the absence of a full

10   and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop

11   the relevant claims in federal court.  *Id.* at 437.  Although Petitioner contends that omissions

12   by PCR counsel in developing the facts of Claim 9 in state court cannot be attributed to him,

13   omissions by counsel are in fact attributable to a habeas petitioner.  *See id.* at 437-440;

14   *Wildman v. Johnson*, 261 F.3d 832, 839-40 (9th Cir. 2001).  Petitioner did not exercise the

15   diligence required.  Petitioner's PCR counsel was on notice regarding the evidence Petitioner

16   now seeks to introduce, and PCR counsel's failure to introduce such evidence in state court

17   triggers § 2254(e)(2).  *See id.*

18           In a related argument, Petitioner challenges the constitutionality of the habeas statute,

19   28 U.S.C. § 2254(i).  Section 2254(i) provides that "[t]he ineffectiveness or incompetence

20   of counsel during Federal or State collateral proceedings shall not be a ground of relief in a

21   proceeding arising under section 2254."  Because Petitioner is entitled to habeas relief only

22   for violations "of the Constitution or laws or treaties of the United States," 28 U.S.C. §

23   2254(a), and, as already set forth, there is no federal constitutional right to the effective

24   assistance of PCR counsel, the constitutionality of § 2254(i) is irrelevant.

25           Because Petitioner did not make a reasonable attempt to develop the factual basis of

26   this claim in state court and does not allege that he can satisfy the requirements of §§

27   2254(e)(2)(A) & (B), this Court is barred from granting an evidentiary hearing or expanding

28   the record with respect to the merits of Claim 9.  *See Williams*, 529 U.S. at 435.

1    Petitioner was not diligent in developing the exhausted aspects of Claim 9.  Therefore,

2    the Court is barred from holding an evidentiary hearing, pursuant to § 2254(e)(2).  Because

3    this Court is barred from holding an evidentiary hearing, there is no good cause for discovery

4    because any evidence developed in discovery could not be considered by the Court.  *See*

5    *Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (stating that if a habeas petitioner has not

6    been reasonably diligent in developing the factual basis of a claim while in state court, the

7    AEDPA limits a petitioner's right to discovery or an evidentiary hearing on habeas review);

8    *Boyko*, 259 F.3d at 792 (finding that discovery should not be allowed to augment the merits

9    of a petitioner's claims unless he was diligent); *Cherri v. Braxton*, 131 F. Supp.2d 756, 775-

10   76 (E.D. Va. 2000); *Charles v. Baldwin*, No. CV-97-380-ST, 1999 WL 375591, at *3 (D. Or.

11   Apr. 14, 1999) (no good cause for discovery to locate evidence in support of the merits of

12   a claim unless petitioner first satisfies § 2254(e)(2)), *aff'd*, 49 Fed. Appx. 715, 718, 2002 WL

13   31395774, *2 (9th Cir. 2002).

14   ## **CERTIFICATE OF APPEALABILITY**

15   Although this is not a final order in these proceedings, the Court has endeavored to

16   determine, if judgment is ultimately entered against Petitioner, whether a certificate of

17   appealability ("COA") should be granted on the issues addressed herein.  Pursuant to 28

18   U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial

19   showing of the denial of a constitutional right."  This showing can be established by

20   demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that)

21   the petition should have been resolved in a different manner" or that the issues were

22   "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473,

23   484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural

24   rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition

25   states a valid claim of the denial of a constitutional right, and (2) whether the court's

26   procedural ruling was correct.  *Id.*

27   The Court finds, for the reasons set out in this Order, that reasonable jurists could not

28   debate the Court's denial of evidentiary development on Claims 1, 4, and 9, or the dismissal

1  of Claim 1 (change of venue due to shackling), Claim 2, Claim 4 (prosecutorial misconduct-

2  Detective Masino), Claim 6, and Claim 9(c) as procedurally barred and Claim 5(b) as

3  meritless.  Accordingly, the Court does not intend to issue a COA on any of these issues in

4  the event judgment is entered against Petitioner.

5       Based on the foregoing,

6       **IT IS ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**:

7  Claim 1 (change of venue due to shackling), Claim 2, Claim 4 (prosecutorial misconduct-

8  Detective Masino), Claim 6, and Claim 9(c) based on a procedural bar and Claim 5(b) on the

9  merits.

10       **IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery, Evidentiary

11  Hearing and Expansion of the Record (Dkt. 78) is **DENIED**.

12       **IT IS FURTHER ORDERED** that if, pursuant to LR Civ 7.2(g), Petitioner or

13  Respondents file a Motion for Reconsideration of this Order, such motion shall be filed

14  within fifteen (15) days of the filing of this Order.

15       **IT IS FURTHER ORDERED** that the Clerk of the Court forward a courtesy copy

16  of this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ

17  85007-3329.

18       DATED this 25th day of September, 2006.

19

20

21

22

23  _____
       Mary H. Murguia
     United States District Judge

24

25

26

27

28