**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darrel Easton Lee,<br><br>             Petitioner,<br><br>v.<br><br>Charles L. Ryan, *et al.*,<br><br>             Respondents. | No. CV-04-0039-PHX-JTT<br><br>DEATH PENALTY CASE<br><br>**ORDER** |

This case is before the Court on limited remand from the Ninth Circuit Court of Appeals. (Doc. 109.) The Court is directed to reconsider, in the light of intervening law, Claim 2 of Lee's habeas petition and to address whether reconsideration of Claims 9(A) and (D) is warranted. (*Id.*)

The issues have been briefed. (Docs. 120, 124, 128.) For the reasons set forth below, the Court finds that Lee is not entitled to relief on the remanded issues.

## **BACKGROUND**

Lee was tried, convicted, and sentenced to death for the 1991 murder of John Anderson. On December 5, 1991, Lee and co-defendant Karen Thompson approached Anderson as he was leaving a clinic in Phoenix and asked him for a ride. They planned to kidnap and rob him in order to get money to buy drugs. Lee, who pretended to be armed, told Anderson to drive south on the freeway. When they arrived in Chandler, Lee and Thompson took Anderson's wallet. They used Anderson's ATM cards and credit cards over the next five days, both before and after killing him.

Lee and Thompson bound Anderson's hands and feet and left him in a ditch alongside the road. They came back for him, however, and placed him in the trunk of the car.

Lee and Thompson drove toward California, stopping frequently to use cocaine and alcohol. They decided to kill Anderson to avoid apprehension. Lee stated he would asphyxiate Anderson with the car's exhaust and obtained a hose for that purpose.

After about eight hours, Lee and Thompson stopped the car and attempted to suffocate Anderson with car fumes by running the hose from the exhaust pipe into the trunk. Their efforts failed because Anderson kept pushing up the trunk lid. While the couple paused to use more cocaine, Anderson escaped from the trunk and attempted to flee. Lee chased Anderson and wrestled him to the ground. Thompson then brought Lee a belt, which he used to strangle Anderson. The belt broke, and Lee yelled for Thompson to get a rock. As Lee choked Anderson with his hands, Thompson hit Anderson in the head with the rock, fracturing his skull.

Lee and Thompson placed the body in the trunk of the car. After driving to California and then back to Phoenix, the couple eventually went to Tucson, where they purchased a shovel and buried Anderson in a shallow grave outside the city.

A La Paz County grand jury indicted Lee and Thompson on one count each of first-degree murder, kidnapping, theft, armed robbery, and credit card theft. Thompson entered a plea of guilty to first-degree murder and armed robbery and testified against Lee.

Lee first accepted, then rejected, a plea offer in which the State agreed not to pursue the death penalty. At trial he presented an alibi defense. He was convicted on all counts.

After an aggravation/mitigation hearing, the trial judge sentenced Lee to death for first-degree murder. He found the following aggravating factors: that Lee had a prior felony conviction involving the use or threat of violence pursuant to A.R.S. § 13–703(F)(2); that he had participated in the killing for pecuniary gain, A.R.S. § 13–703(F)(5); and that the murder was perpetrated in an especially cruel manner, A.R.S. § 13–703(F)(6).[1] The judge

---

[1] At the time of Lee's offense, Arizona's capital sentencing scheme was set forth in A.R.S. §§ 13–703 and 13–703.01 to –703.04. It is presently set forth in A.R.S. §§ 13–751

also determined that the following mitigation existed but was not substantial enough to call for leniency: Lee was remorseful; he admitted his guilt; he lacked education and had a low level of intelligence; he had strong family ties; he was a "follower" by nature; co-defendant Thompson received a life sentence; and the prosecutor had recommended against the death penalty.

On direct appeal, the Arizona Supreme Court affirmed Lee's convictions and sentences. *State v. Lee*, 185 Ariz. 549, 917 P.2d 692 (1996). After unsuccessfully pursuing postconviction relief ("PCR"), Lee commenced proceedings in this Court, filing an amended petition for writ of habeas corpus on November 29, 2004. (Doc. 52.)

In a 2006 order, the Court denied a number of Lee's claims, including Claim 2, alleging that trial counsel performed ineffectively by failing to request a competency hearing, which the Court found procedurally barred. (Doc. 87.) In a subsequent order and judgment dated September 30, 2010, the Court denied Lee's remaining claims, including Claims 9(A) and (D), alleging ineffective assistance of counsel during the guilt and penalty phases, which the Court found meritless. (Doc. 93.)

The Ninth Circuit's remand order directs the Court to consider with respect to these claims the effects of intervening law, including *Martinez v. Ryan*, 566 U.S. 1 (2012); *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc); *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) (en banc); and *Woods v. Sinclair*, 764 F.3d 1109 (9th Cir. 2014).

## **APPLICABLE LAW**

Federal review is generally not available for a state prisoner's claims when those claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In such situations, review is barred unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Id. Coleman* held that ineffective assistance of counsel in post-conviction proceedings does not establish cause for the procedural default of a claim. *Id.*

---

to –759. The Court refers throughout this order to the statutes in effect at the time Lee committed the crime.

- 3 -

In *Martinez*, however, the Court announced a new, "narrow exception" to the rule set out in *Coleman*. The Court explained that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17; *see also Trevino v. Thaler*, 569 U.S. 413, 418 (2013).

Accordingly, under *Martinez* an Arizona petitioner may establish cause and prejudice for the procedural default of an ineffective assistance of trial counsel claim by demonstrating that (1) PCR counsel was ineffective and (2) the underlying ineffective assistance claim has some merit. *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 566 U.S. at 14); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 818 (9th Cir. 2015) (en banc).

To demonstrate that PCR counsel was ineffective, a petitioner must "establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Clabourne*, 745 F.3d at 377 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). Determining whether there was a reasonable probability of a different outcome "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* at 377–78. "PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

For claims that were adjudicated on the merits in state court, federal habeas review "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In *Dickens*, the Ninth Circuit ruled that *Pinholster* does not apply to a claim that has been "fundamentally altered" by new evidence because such a claim was

not adjudicated on the merits in state court. 740 F.3d at 1320. The claim is therefore unexhausted and subject to analysis under *Martinez*. *Id.* at 1318.

According to *Dickens*, a claim has not been exhausted in state court if new evidence produced during federal habeas proceedings fundamentally alters the legal claim considered by the state court or places the case in a significantly different and stronger evidentiary posture than it was when the state court considered it. *Id.* at 1318–19.

## **ANALYSIS**

The Court has discussed in detail the factual and procedural background of the three remanded claims. (Docs. 87, 93.) This information will be repeated only as necessary for the Court's analysis.

**1.    Claim 2:**

In Claim 2 of his amended habeas petition, Lee alleged that he was tried while mentally incompetent and that trial counsel performed ineffectively by failing to request a competency hearing. (*See* Doc. 52 at 45–50.) Lee did not exhaust this claim in state court and the Court denied the claim as procedurally defaulted and barred from review. (Doc. 87 at 12–13.) On remand, Lee argues that his default of the claim is excused under *Martinez* by the ineffective performance of PCR counsel. The Court finds that PCR counsel did not perform ineffectively by failing to raise this meritless claim.

The standard for competency requires that a defendant have (1) "'a rational as well as factual understanding of the proceedings against him,' and (2) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). The assessment of whether a defendant is capable of understanding the proceedings and assisting counsel takes into account evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence. *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

"A claim that counsel was deficient for failing to move for a competency hearing will succeed only when there are sufficient indicia of incompetence to give objectively

reasonable counsel reason to doubt defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Hibbler v. Benedetti*, 693 F.3d 1140, 1149–50 (9th Cir. 2012) (internal quotation marks omitted). Lee can make neither showing.

First, there were not sufficient indicia of incompetence to give Lee's counsel, Steven Politi, reason to doubt Lee's competence. The fact that Lee suffered from, and was being medicated for, chronic depression was not in itself sufficient to show that he was incompetent. *See Boyde v. Brown*, 404 F.3d 1159, 1166–67 (9th Cir. 2005) (finding inmate's "major depression" and "paranoid delusions" did not raise a doubt regarding his competence to stand trial); *see also United States v. Garza*, 751 F.3d 1130, 1135–37 (9th Cir. 2014) (finding no need for competency hearing where defendant was diagnosed with anxiety and dementia but his behavior, in and out of court, was not erratic and there was no clear connection between any mental disease and a failure on defendant's part to understand the proceedings or assist in his own defense); *Hoffman v. Arave*, 455 F.3d 926, 938 (9th Cir. 2006) ("We have held that those with mental deficiencies are not necessarily incompetent to stand trial."), *vacated on other grounds by Arave v. Hoffman*, 552 U.S. 117, 117–19 (2008) (per curiam)).

Lee notes that Politi testified in 2002 that he felt Lee "had some mental problems" and that the prosecutor, Steve Suskin, in a 2015 declaration stated that Lee "did not seem very intelligent" or "rational" in his decision not to accept a plea agreement. (Doc. 120 at 74.)

Lee also quotes a psychiatric evaluation by Dr. Barry Morenz dated August 24, 2015. Dr. Morenz diagnosed Lee with chronic depression, severe alcohol dependence, and a severe cocaine disorder. (Doc. 120-1, Ex. 5 at 10.) Dr. Morenz added:

> There is a reasonable probability that some of the legal choices [Lee] made, including his rejection of a plea offer, that would have spared his life, and his decision to testify to a false alibi, and the assistance he provided his attorney reflected his shame and a belief that he deserved whatever he received. Thus, it is difficult to understand why his then-counsel did not seek a determination of whether he was competent to stand trial at the time of his litigation.

(*Id.*)

As Respondents note, this opinion does not address the standard for competence, which consists of an understanding of the proceedings and the ability to communicate rationally with counsel.

The cases cited by Lee are readily distinguishable. For example, in *Burt v. Uchtman*, 422 F.3d 557, 569 (7th Cir. 2005), counsel performed ineffectively by not litigating the defendant's competence when they knew he "was heavily medicated, reported fearing imaginary snakes in his cell, had difficulty staying awake during trial, and told his attorneys that he wanted to plead guilty so he could return to state prison to smoke." He was also "frequently violent and threatened to hurt others in the courtroom." *Id.* This is a far different scenario from that faced by Lee's counsel, whose client suffered from depression but displayed no bizarre or disruptive behavior.

Moreover, Lee's insistence on denying his guilt and pursuing an alibi defense is not suggestive of incompetence. "Criminal defendants often insist on asserting defenses with little basis in the law, particularly where, as here, there is substantial evidence of their guilt," but "adherence to bizarre legal theories" does not imply incompetence. *United States v. Jonassen*, 759 F.3d 653, 660 (7th Cir. 2014) (noting defendant's "persistent assertion of a sovereign-citizen defense"); *see United States v. Kerr*, 752 F.3d 206, 217–18 (2d Cir.), *as amended* (June 18, 2014) ("Kerr's obsession with his defensive theories, his distrust of his attorneys, and his belligerent attitude were also not so bizarre as to require the district court to question his competency for a second time."). "[P]ersons of unquestioned competence have espoused ludicrous legal positions," *United States v. James*, 328 F.3d 953, 955 (7th Cir. 2003), "but the articulation of unusual legal beliefs is a far cry from incompetence," *United States v. Alden*, 527 F.3d 653, 659–60 (7th Cir. 2008) (explaining that defendant's "obsession with irrelevant issues and his paranoia and distrust of the criminal justice system" did not imply mental shortcomings requiring a competency hearing).

The claim that trial counsel performed ineffectively by failing to move for a competency determination is without merit. PCR counsel did not perform ineffectively by

failing to raise it. The claim therefore remains procedurally defaulted and barred from federal review.

**2. Claim 9(A):**

In Claim 9(A), Lee alleged that trial counsel performed ineffectively by presenting an alibi defense he knew was false. The Court denied the claim on the merits. (Doc. 93 at 33–48.) Lee contends that new evidence renders the claim fundamentally altered and therefore unexhausted and subject to the application of *Martinez*. (Doc. 120 at 16.) The Court disagrees.

On remand Lee contends that evidence this Court did not previously consider, a transcript of an interview between prosecutor Suskin and Lee's father, demonstrates that Lee told Politi he was present when the crimes were committed. Lee also offers 2015 declarations from Suskin and PCR counsel, Matthew Newman, addressing the impact of that transcript.

In the interview transcript, Suskin indicated that Lee had informed him during plea negotiations that "he was there, and… and… you know… [the co-defendant] did most of the stuff. He blames most of it on her, but—a… and she doesn't deny it." (Doc. 120-1, Ex. 1 at 32–33.) Politi was not present at the interview.

In his declaration, Suskin states that has no independent recollection of Lee telling him and Politi that he was present when the co-defendant killed the victim but in light of the interview transcript, "it is more likely than not that Darrel Lee informed me and Mr. Politi that he was present when the homicide was committed." (*Id.*, Ex. 3 at 2.)

In his declaration, PCR counsel states that he should have used the transcript at the PCR evidentiary hearing and had no strategic basis for failing to do so. (*Id.*, Ex. 3 at 2–3.)

The transcript provides additional evidentiary support for Lee's allegation that trial counsel knew that Lee's alibi defense was false but it does not alter the claim under the standard in *Dickens*. Generally, a petitioner may add factual materials supportive of those already in the record without fundamentally altering his claim and rendering it unexhausted. *See Vasquez v. Hillery*, 474 U.S. 254, 260 (1986) (statistical analyses of facts

already in record do not render claim unexhausted); *see also Weaver v. Thompson*, 197 F.3d 359, 364–65 (9th Cir. 1999) (whether bailiff's instruction was coercive because it required jury to continue deliberating, as alleged in state court, or because it required verdict on all counts, as habeas court found, claim was exhausted because the factual basis was rooted in same incident); *Chacon v. Wood*, 36 F.3d 1459, 1468–69 (9th Cir. 1994) (factual basis of claim that interpreter mistranslated guilty plea proceedings was fairly presented where the state court understood accuracy of translation to be at issue).

The petitioner in *Dickens* raised only general allegations in the state court proceedings that "sentencing counsel did not effectively evaluate whether Dickens 'suffer[ed] from any medical or mental impairment.'" 740 F.3d at 1319. In his federal habeas petition, however, he "changed his claim to include extensive factual allegations suggesting Dickens suffered from FAS [Fetal Alcohol Syndrome] and organic brain damage." *Id.* at 1317.

The court found that Dickens's "new evidence creates a mitigation case that bears little resemblance to the naked *Strickland* claim raised before the state courts." *Id.* at 1319. It further noted that the claim urged in state court only "generally alleged that sentencing counsel did not effectively evaluate whether Dickens 'suffer[ed] from any medical or mental impairment'" and that specific conditions like FAS and organic brain damage placed the claim in a "significantly different" and "substantially improved" evidentiary posture. *Id.*

In Lee's case, the interview transcription simply provides additional circumstantial support for his allegation that he told Politi of his involvement in the crimes. The allegation itself, while somewhat stronger, is not altered at all, nor is its posture significantly different. It remains the same claim the Court already denied on the merits.

Therefore, the Court will not reconsider its denial of Claim 9(A).

**3.** **Claim 9(D):**

In Claim 9(D), Lee alleged that counsel performed ineffectively at sentencing by failing to investigate and present available mitigating evidence, including Lee's social

history, and by failing to offer expert evidence to prove the (G)(1) statutory mitigating factor and rebut the aggravating factors alleged by the State.[2] (*See* Doc. 120 at 8.) Lee contends that the social history evidence would have shown the following: Lee was physically and emotionally abused by his alcoholic father; he was exposed to and traumatized by the severe physical abuse inflicted by his father on his mother when he was a child; he performed good deeds, had a good character, and his family loved him; he and his siblings grew up in poverty; and he had suffered from depression his entire adult life stemming from his abusive childhood and the shooting death of his 15-year-old younger brother. (*Id.* at 12–13.)

Lee further contends that trial counsel failed to present evidence that that Lee was suffering from alcohol toxicity when he committed the 1987 robbery that was used to prove the (F)(2) aggravating factor. (*Id.* at 8–9.) He also argues that counsel erred in not presenting evidence that Lee was suffering from cocaine withdrawal syndrome, as opposed to cocaine intoxication, when he and Thompson kidnapped Anderson. (*Id.* at 9–11.)

As noted, the Court rejected this claim on the merits. (Doc. 93 at 48–72.) To render the claim unexhausted and subject to review under *Martinez*, the new evidence Lee presents must fundamentally alter the claim. *Dickens*, 740 F.3d at 1318–19. It does not. In fact, evidence regarding all of these issues was before the state courts.

Evidence that Lee was abused by his alcoholic father was present in the presentence report ("PSR") prepared for sentencing (Doc. 92, Ex. C at 8) and in Dr. Anne Herring's report prepared for the PCR proceedings (Doc. 90-1, Ex. C at 2). The PSR also contained evidence that Lee was exposed to his father's physical abuse of his mother. (Doc. 92, Ex. C at 8.)

The state court records contained evidence that Lee grew up in poverty. (Doc. 92, Ex. C at 8.) Evidence that Lee was made fun of by his school mates and that one Christmas

---

[2] A.R.S. § 13–703(G)(1) provides that a mitigating circumstance exists where, "The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."

his gifts had to be returned because his father could not pay for them (*see* Doc. 120 at 52) does not fundamentally alter the claim.

Evidence of close family ties and strong family support was before the trial court at sentencing in counsel's sentencing memo (Doc. 90-2, Ex. 4 at 14) and a letter from Lee's mother (Doc. 90-2, Ex. 7). *See Lee*, 185 Ariz. at 553, 917 P.2d at 696. Evidence that Lee did favors for his family, such as building additions to his parents' house (*see* Doc. 120 at 54), does not fundamentally alter the claim.

Evidence that Lee suffered from depression was before the PCR court in the reports of Dr. Geoffrey Ahern and Dr. Herring. Dr. Ahern reported that Lee had taken Elavil for eight or nine years to treat depression. (Doc. 90-1, Ex. B at 2.) Dr. Herring reported Lee's statement that he had been depressed all of his life and that he was prescribed Elavil and other depression medications. (Doc. 90-1, Ex. C at 2.) Dr. James Youngjohn testified at the PCR evidentiary hearing that Lee's depression scale on the MMPI-2 was elevated. (RT 5/21/02 at 68–69.) Lee's mother testified at the PCR evidentiary hearing that the shooting death of Lee's younger brother caused Lee to go into a downward spiral. (RT 4/17/02 at 152–53.) With respect to Lee's diagnosis of depression, Lee offers no new evidence that was not available to the state court.

Evidence that Lee was highly intoxicated when he committed the 1987 robbery was presented at sentencing in Dr. Garcia-Bunuel's report (Doc. 90-2, Ex. 8 at 2) and was discussed in subsequent expert reports.

In these federal habeas proceedings, Lee has presented a report by Dr. Murray Smith, a physician specializing in addiction medicine. (Doc. 102-1, Ex. 4.) Dr. Smith explains the effects of Cocaine Withdrawal Syndrome, which Lee alleges he was suffering from when he and Thompson decided to kidnap Anderson.[3] (*Id.* at 4.) This information is not new. The trial produced evidence that the kidnapping took place at a time when Lee and Thompson were seeking money to buy cocaine, and Dr. Morenz testified during the

---

[3] Dr. Garcia-Bunuel opined that Lee, "at the time of the commission of the crimes of which he has been convicted, was suffering from a combined cocaine/alcohol intoxication, complicating a pre-existing organic brain syndrome." (Doc. 90-2, Ex. 8 at 6.)

1  PCR evidentiary hearing that "the original purpose of the kidnapping was to obtain money
2  for more cocaine; and prior to kidnapping him, they had tried some other strategies to get
3  money." (RT 5/21/02 at 13.)

4  Given the information that was before the state court, additional expert evidence
5  that Lee was suffering from cocaine withdrawal, instead of cocaine intoxication, at the
6  outset of the events leading to Anderson's murder does not fundamentally alter the claim
7  considered by the PCR court.

8  By the time the PCR court ruled on this claim of ineffective assistance of counsel at
9  sentencing, Lee had been examined by six mental health professionals: Drs. Garcia-
10 Bunuel, Bayless, Ahern, Herring, Morenz, and Youngjohn. Their reports thoroughly and
11 specifically documented Lee's psychological and neuropsychological conditions.[4] The
12 reports and testimony also provided social history information about Lee's deprived and
13 abusive childhood, his struggles with substance abuse, and the resulting encounters with
14 the criminal justice system. Additional social history information was provided in letters
15 from Lee's parents and in the PSR.

16 The evidence developed since the conclusion of Lee's state court proceedings is
17 either cumulative or consistent with the information before the PCR court when it denied
18 this claim. The new evidence supports but does not fundamentally alter the claim of
19 ineffective assistance of counsel ruled on by the PCR court. *See Escamilla v. Stephens*, 749
20 F.3d 380, 395 (5th Cir. 2014) (finding *Martinez* inapplicable where new petitioner's
21 mitigating evidence "did not 'fundamentally alter' his claim, . . . but merely provided
22 additional evidentiary support for his claim that was already presented and adjudicated in
23 the state court proceedings.").

---

[4] Dr. Ahern administered an EEG and MRI. (RT 5/21/02 at 6, 23.) The EEG test results were normal and the MRI was normal with no structural abnormalities identified. (*Id.*; *see also* Doc. 90-1 at 4.) Dr. Herring administered a series of neuropsychological tests. She found some weaknesses in Lee's executive functioning but determined they were not dramatic deficits. (RT 5/21/02 at 7–10.) She opined that Lee has poor judgment and poor impulse control. (Doc. 90-1, Ex. C at 9.) Dr. Morenz made a provisional Axis I diagnosis of cognitive disorder not otherwise specified. (RT 5/21/02 at 17; *see also* Doc 90-1 at 18.)

As noted above, in *Dickens*, "new evidence of specific conditions (like FAS and organic brain damage) clearly place[d] Dickens's *Strickland* claim in a 'significantly different' and substantially improved' evidentiary posture." 740 F.3d at 1319. As a result, "the new evidence create[d] a mitigation case that [bore] little resemblance to the naked *Strickland* claim raised before the state courts." *Id.* Here, by contrast, Lee's claim of ineffective assistance of counsel at sentencing was supported in state court by evidence of numerous and specific mental health conditions and information about Lee's troubled background. It was never a "naked *Strickland* claim."

The claim has not been rendered unexhausted by the new evidence produced during these habeas proceedings. Accordingly, the Court will not reconsider its denial of Claim 9(D).

## **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, an applicant cannot take an appeal unless a certificate of appealability has been issued. Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district judge must either issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If a certificate is issued, the court must state the specific issue or issues that satisfy 28 U.S.C. § 2253(c)(2).

Under § 2253(c)(2), a certificate of appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court finds that reasonable jurists could debate its resolution of remanded Claims 9(A) and 9(D).

. . . .

. . . .

## **CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that Claim 2 remains procedurally barred and is **DENIED**.

**IT IS FURTHER ORDERED** Lee's request to reconsider Claims 9(A) and 9(D) is **DENIED.**

**IT IS FURTHER ORDERED** that Lee's request to expand the record is **GRANTED** with respect to the exhibits attached to his supplemental *Martinez* brief (Doc. 120).

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** as to remanded Claims 9(A) and 9(D).

Dated this 5th day of April, 2019.

Honorable John J. Tuchi
United States District Judge